# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | |
|---|---|
| **CONCORD ENERGY LLC** § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | **CASE NO: 4:21-cv-00328** |
| § | |
| § | |
| **HELLERVIK OILFIELD** § | |
| **TECHNOLOGIES, LLC,** § | |
| § | |
| Defendant. § | |

## DEFENDANT'S REPLY IN SUPPORT OF PARTIAL MOTION FOR SUMMARY JUDGEMENT ON PLAINTIFF'S DAMAGES

**TABLE OF CONTENTS**

A.  SUMMARY OF KEY REPLY POINTS. ................................................................................... 1

    *The Contract Prohibits Lost Profits Damages, Even if They Are Direct Damages* ........ 1

    *The Lower Net Proceeds Claim is a Claim for Lost Profits* ............................................. 1

    *Concord Should Not Use Parol Evidence to Rewrite the Contract* ................................ 1

    *The Motion is Not Premature* ........................................................................................ 2

B.  THE AGREEMENT BARS CONCORD FROM RECOVERING LOST PROFITS, INCLUDING LOST PROFITS THAT ARE DIRECT DAMAGES. ....................................................................... 2

C.  CONCORD'S LOWER NET PROCEEDS CLAIM IS FOR LOST PROFITS, NOT THE COST OF COVERING WITH A SUBSTITUTE SERVICE. ................................................................... 3

D.  CONCORD'S TRANSPORTATION COSTS ARE INCIDENTAL DAMAGES ........................ 7

E.  CONCORD'S DUTY TO MITIGATE DAMAGES DOES NOT INVALIDATE A VALID, ENFORCEABLE LIMITATION ON LIABILITY CLAUSE ....................................................... 11

F.  THE MOTION IS NOT PREMATURE ................................................................................ 11

G.  CONCLUSION ................................................................................................................ 12

# TABLE OF AUTHORITIES

**Cases**

*ATI Telecom, Inc. v. Trescom Int'l, Inc.*
  No. 95 CIV. 9749 (DC), 1996 WL 455010, (S.D.N.Y. Aug. 12, 1996) ................................. 4, 5

*Bennu Oil & Gas, LLC v. Bluewater Indus, L.P.*
  517 B.R. 756, 768 (Bankr. S.D. Tex. 2014) ......................................................................... 4, 5

*Cherokee Cty. Cogeneration Partners, L.P. v. Dynegy Mktg. & Trade*
  305 S.W.3d 309 (Tex. App—Houston [14th Dist.] 2009, no pet.) ............................................ 5

*ENGlobal U.S. Inc. v. Native Am. Servs. Corp.*
  No. CV H-16-2746, 2017 WL 4409289, at *5 (S.D. Tex. Oct. 4, 2017) ................................... 3

*Hughes Commc'ns Galaxy, Inc. v. United States*
  271 F.3d 1060, 1066-67 (Fed. Cir. 2001) ............................................................................ 4, 5

*In re Adi Liquidation, Inc.*
  555 B.R. 423 (Bankr. D. Del. 2016) ......................................................................................... 8

*Reynolds Metals Co. v. Westinghouse Elec*. Corp.
  758 F.2d 1073, 1079 (5th Cir. 1985) ........................................................................................ 8

*Tennessee Gas Pipeline Co. v. Technip USA Corp.*
  No. 01-06-00535-CV, 2008 WL 3876141 (Tex. App.—Houston [1st Dist.] Aug. 21, 2008, pet. denied) (mem. op.) ........................................................................................................ 10

**Statutes**

Tex. Bus. & Com. Code § 2.712(c) ................................................................................................ 4

**Other Authorities**

RESTATEMENT (SECOND) OF CONTRACTS § 347 (1979) ................................................... 7

Defendant Hellervik Oilfield Technologies, LLC ("Hellervik") hereby files this Reply in support of Partial Motion for Summary Judgement on Plaintiff's Damages (the "Motion") pursuant to Rule 56 of the Federal Rules of Civil Procedure.

A.    **Summary of Key Reply Points.**

*The Contract Prohibits Lost Profits Damages, Even if They Are Direct Damages.* Texas law recognizes that lost profits damages can sometimes be direct damages and sometimes be indirect damages. The parties' Agreement bars recovery of any lost profits—whether direct or indirect. Plaintiff's Response Brief works hard to argue that its "lower net proceeds" measure of damages is "direct damages." But, whether the "lower net proceeds" calculation is direct or indirect damages is immaterial. What matters is whether it is an effort to recover lost profits, and it is. It is therefore barred by the contract.

*The Lower Net Proceeds Claim is a Claim for Lost Profits.* Concord likens its "lower net proceeds" to "cover" rather than lost profit. But the measure of damages does not meet the characteristics of "cover"—indeed, Concord concedes that an apples-to-apples comparison cannot be done. Concord describes the measure as considering both revenue and costs and "netting" the revenue and costs. There is a simple term for that type of calculation. It is "lost profit," and it is prohibited by the contract.

*Concord Should Not Use Parol Evidence to Rewrite the Contract.* Concord concedes that freight or transportation charges are sometimes incidental or consequential damages—which are both barred by the parties' Agreement. That is the general rule, and nothing in this Agreement removes it from the general rule. Concord's transportation cost claim (as articulated by its own expert) falls squarely in the Restatement definition of incidental damages. Concord, relies on parol evidence to explain why it is important to Concord to recover its transportation costs, despite the

1

contract's language. But the parol evidence does not change the contract. If it was important to Concord that it be able to recover its transportation costs, it should not have agreed to a contractual provision barring recovery of incidental (and also consequential) damages. The court should not use Concord's parol evidence to rewrite the parties' contract.

***The Motion is Not Premature.*** Concord encourages the Court to kick the can down the road and deal with this issue later. That would deprive Hellervik of the value of its bargained for contractual provision waiving the measures of damages that Concord seeks.

**B.     The Agreement Bars Concord from Recovering Lost Profits, Including Lost Profits that are Direct Damages.**

Under Texas law, lost profits may take the form of either direct or consequential damages. (*See* Mot. p. 2) The Agreement between Hellervik and Concord bars any claims for lost profits, including those that are direct. (*Id.* at pp. 8-9) The contract states: "NEITHER PARTY SHALL BE LIABLE TO THE OTHER PARTY FOR **ANY LOST PROFITS** . . ." (Mot. Ex. 3, Agrmt. ¶ 20 (All caps in orig.)(bold emphasis added).) The contract separately bars the recovery of indirect damages and consequential damages. *Id*. If the lost profits provision is read to only bar indirect lost profits or consequential lost profits, then the contract's lost profits language would be rendered meaningless (because indirect damages and consequential damages are barred in their entirety).

Concord argues at length that its Lower Net Proceeds are direct damages. (Resp. pp. 13-20) Hellervik disagrees for reasons explained in its Motion. (Mot. pp. 13-14, 16-17.) But, even if Concord is correct, the contract language still prohibits their recovery as lost profits. If the Lower Net Proceeds claim is direct damages, that only avoids the contractual prohibition on recovery of consequential damages. It does not avoid the contractual prohibition on recovery of any lost profits damages, even if they are direct.

2

Courts in this District applying Texas law have "construed damages-limitation clauses to preclude 'both direct and consequential lost profits where the clauses expressly waived damages for either lost profits or consequential damages,' but have 'held that direct lost profits were not precluded where only 'consequential' damages, either generally or 'including' lost profits were waived.'" *ENGlobal U.S. Inc. v. Native Am. Servs. Corp.*, No. CV H-16-2746, 2017 WL 4409289, at *5 (S.D. Tex. Oct. 4, 2017) (Rosenthal, J.) (emphasis added) (internal citations omitted).

C.  **Concord's Lower Net Proceeds Claim is for Lost Profits, Not the Cost of Covering with a Substitute Service.**

To avoid its Lower Net Proceeds claim being categorized as lost profits barred under the Agreement, Concord argues that when it sent its Y-Grade to Alternative Disposition facilities it "covered" with a substitute service and Concord's Net Proceeds calculations are actually Concord's costs of covering. In making this argument, Concord asks the Court to apply the concept of "cover" to a set of facts to which it plainly does not apply.

Critically, "cover" only applies in the situation where the aggrieved buyer purchases ***a substitute service*** for the service that the seller did not deliver. In connection with the Y-Grade that Concord sent to Alternative Disposition facilities, which gives rise to Concord's Lower Net Proceeds claim, Concord's expert report and Response brief conclusively establish that Concord did not purchase a substitute service. According to Concord:

- The Alternative Disposition facilities "accepted and processed y-grade in a different way than Hellervik" (Resp. p. 9)

- It is "impossible to have an "apples-to-apples" comparison of Concord's "cost" with respect to each Alternative Disposition versus the cost had Hellervik fulfilled the Contract" (*Id.*)

- "the losses are calculated differently because of the nature of the service provided" (*Id.* p. 14)

3

It is impossible for Concord to compare Concord's costs with Hellervik under the Agreement against Concord's costs with the Alternative Disposition transactions because, for those transactions, Concord chose a different method of disposing of its Y-Grade that involved a completely different set of services, costs, and revenue streams than Concord faced under its contract with Hellervik. For the transactions that form the basis of its Lower Net Proceeds claim, ***Concord did not cover with a substitute service***.

> Under the UCC,
>
> the buyer may "cover" by making in good faith and without unreasonable delay any reasonable purchase of or contract to purchase goods in substitution for those due from the seller. … The buyer may recover from the seller as damages the difference between the cost of cover and the contract price…

(Tex. Bus. & Com. Code § 2.712(c))  "Cover" is one optional remedy, among others, for an aggrieved buyer of goods under the UCC. (*See* Tex. Bus. & Com. Code § 2.712(c); § 2.713(cmt. 5). Importantly, the UCC defines precisely how a party must calculate its damages for covering. (*See* Tex. Bus. & Com. Code § 2.712). "***The buyer may recover from the seller as damages the difference between the cost of cover and the contract price***". (*Id*.)  It is obvious that this is not the calculation that Concord's damages expert performed for Concord's Lower Net Proceeds claim.

The caselaw cited by Concord involving substitute services use the exact same approach as the UCC to calculate cover, *i.e.*, damages are measured by ***the difference between the contract price and cost of the substitute service***. (*See* Resp. pp. 13-14, 19; *Hughes Commc'ns Galaxy, Inc. v. United States*, 271 F.3d 1060, 1066-67 (Fed. Cir. 2001); *ATI Telecom, Inc. v. Trescom Int'l, Inc*., No. 95 CIV. 9749 (DC), 1996 WL 455010, (S.D.N.Y. Aug. 12, 1996); *Bennu Oil & Gas, LLC v. Bluewater Indus, L.P*., 517 B.R. 756, 768 (Bankr. S.D. Tex. 2014).  Concord's measure of damages is far more complex.

4

In *Hughes*, the primary case relied on by Concord, Hughes and NASA executed a Launch Service Agreement to have NASA use its shuttles to launch Hughes' commercial satellites into space. (271 F.3d 1060, 1064) NASA breached and did not provide the launch service. (*Id*. at 1064-65) To cover, Hughes incurred costs using a different launch service, using expendable launch vehicles ("ELV") rather than NASA's shuttles. (*Id*.) Hughes sought to recover damages strictly based on "its increased costs in launching satellites". (Id. at 1065).

In *ATI Telecom, Inc. v. Trescom Int'l, Inc*., No. 95 CIV. 9749 (DC), 1996 WL 455010, (S.D.N.Y. Aug. 12, 1996), another case cited by Concord, ATI entered a long-distance phone service contract with Trescom. (*Id.* at *1) Trescom did not provide the phone service. (*Id*.) ATI alleged that it incurred costs purchasing long-distance phone service from alternative suppliers at higher costs than ATI's contract price with Trescom. (*Id*. at *3) The court held that ATI's cost of purchasing substitute telephone services was recoverable damage and not lost profit. (*Id*.)

In *Bennu Oil & Gas, LLC v. Bluewater Indus, L.P*., 517 B.R. 756, 768 (Bankr. S.D. Tex. 2014), the court does not address the concept of cover and the page of the opinion cited by Concord relates to a claimant's ability to recover "increased costs of construction" that were supposed to have been performed by the breaching party.

In *Cherokee Cty. Cogeneration Partners, L.P. v. Dynegy Mktg. & Trade*, 305 S.W.3d 309 (Tex. App—Houston [14th Dist.] 2009, no pet.), the plaintiff did not elect to pursue the remedy of "cover", rather the plaintiff sought to recover the difference in the cost of the natural gas under the contract against the cost of the gas at the market price. (*Id*. at 315-316).

The damages models in *Hughes*, *ATI Telecom*, *Bennu*, and *Cherokee* are all based on calculating the difference between plaintiff's *costs* under a contract against the *cost* of obtaining substitute goods and services. The damage calculations in *Hughes*, *ATI Telecom*, *Bennu,* and

5

*Cherokee* do not contain any revenue component and do not involve a "netting" of revenue and costs.

Concord's Lower Net Proceeds damage model and calculations bears no resemblance to the those used in the cases cited by Concord. Importantly, Concord has not cited any case law, and Hellervik is aware of none, that allows a plaintiff to calculate its "cover" damages by calculating the difference between net revenues under the contract and net revenues with non-parties. With respect to the Alternative Disposition transactions, Concord did not elect to cover with substitute services, which is why its damage model does not contain the necessary elements to calculate the costs of covering, including no calculation of the difference between the cost under the "contract price" versus the cost of the "cover price".

Concord acknowledges that it is "impossible" for Concord to compare Concord's costs under the Agreement with Hellervik against Concord's costs incurred with the Alternative Disposition facilities. (Resp. p 9). It is impossible for Concord to calculate its cost of cover because Concord did not cover with a substitute service on the underlying transactions with the Alternative Disposition facilities. Concord's Lower Net Proceeds claim and calculation falls far outside the bounds of the remedy of cover and how the law measures damages for covering.

Concord's Lower Net Proceeds claim is a lost profit calculation. Even in its Response Brief, Concord uses language that demonstrates that the most obvious way to describe the claim is lost profit: "That the calculation considers both revenue and costs and even involves 'netting' the revenue and costs does not render it a measure of lost profits . . ." Resp. at 16. Hellervik disagrees. Netting costs and revenue is how profit is calculated.

Concord notes that Concord did not include in Concord's Lower Net Proceeds calculation all relevant categories of Concord's costs and revenues (Resp. at 17). Inadequacies in Concord's

calculation do not change that Concord's expert's calculations and opinions at their core constitute an argument that Concord would have made more profit if the Hellervik Plant had been available.

Concord's damage calculation for its Lower Net Proceeds claim is based on a comparison of costs and revenues realized by Concord in transactions with the Alternative Disposition facilities, against a different set of costs and revenues that Concord alleges would have been realized under the Agreement with Hellervik. Concord's Lower Net proceeds claim is a claim for lost profits, not a claim for cover.

**D.      Concord's Transportation Costs are Incidental Damages.**

As explained in Hellervik's Motion, Concord's attempt to recover transportation costs fit squarely within the Restatement definition of incidental damages: "costs incurred in a reasonable effort, whether successful or not, to avoid losses caused by the breach." (RESTATEMENT (SECOND) OF CONTRACTS § 347 (1979).) That is exactly how Concord's own expert describes the transportation costs:

> Due to the delay of operations at the [Hellervik] Ray Fractionation Plant, in the period from July 2019 through September 2020 . . . and to mitigate potential damages caused by Hellervik as the result of its failure to deliver operational fractionation capacity by July 2019. . . Concord incurred greater costs to transport the Whiting Y-Grade over longer distances than would have otherwise been required had the Y-Grade been delivered from Whiting Ray to the Ray Fractionation Plant.

(Mot Ex. 4, Adair Report at p. 5). Typically, of course, these types of damages are recoverable, but the parties contractually agreed that they would not be responsible for incidental damages. That agreement should be enforced.

The UCC definition of incidental damages, which is instructive here, expressly includes transportation costs is barred under the Agreement. (*See* Mot. 11-13) For that reason, Concord argues that with respect to incidental damages the UCC "does not necessarily reflect Texas common law regarding categorizations of damages". (Resp. 20). In making this argument,

7

Concord does not identify any difference between the Texas common law definition of incidental damages and the UCC's definition. Contrary to Concord's suggestion, the Fifth Circuit has indicated that the definitions are the same. (*See Reynolds Metals Co. v. Westinghouse Elec*. Corp., 758 F.2d 1073, 1079 (5th Cir. 1985) (applying Texas law and citing (RESTATEMENT (SECOND) OF CONTRACTS § 347 (1979) for the common law definition of incidental damages.); Mot. 11-13) In defining the meaning of incidental damages under the common law, Hellervik is following the exact same approach as the Fifth Circuit, and Concord has not cited any Texas court taking a different approach. Further, Concord's argument that the UCC does not provide guidance to the meaning of the term incidental damages is at odds with Concord's extensive reliance on *Hughes* and the UCC concept of "cover" in Concord's arguments relating to its Lower Net Proceeds Claim.

Concord's reliance on *In re Adi Liquidation, Inc.*, 555 B.R. 423 (Bankr. D. Del. 2016) is misplaced. That case involved an express contractual provision that made some of the costs of transportation part of the contract:

> Section 11.1 of the Supply Agreement provides that White Rose would "add a fuel surcharge to Fairway's invoices in the event that the average monthly price of diesel per gallon exceeds certain thresholds as set forth in the Fuel Surcharge Table...." Section 11.1 additionally provides a method for setting the surcharge amount based upon the government's Central Atlantic Diesel Index.

*Id.* at 437. The court relies on that contractual language to hold that the transportation costs are part of the contract price in that case and, therefore, not incidental damages:

> I agree that, in this instance and under these facts, the Upcharge Rates and Fuel Surcharges as defined in the POC 1868 Statement of Damages (those in sections 3.1 and 11.1 of the Supply Agreement) were bargained for, and are included in the contract price. Therefore, amounts spent on higher Upcharge Rates and Fuel Surcharges as a result of the Debtors' non-delivery with respect to the same products which are also the subject of the Increased Product Cost category would be direct damages to the extent they are proven.

But no such contractual language appears in the contract at issue in this case. The uncontroverted facts show that under the Agreement:

- Concord, not Hellervik, was responsible for transporting Y-grade to or from the Hellervik facility;

- Hellervik was not responsible for paying for Concord's transportation costs in doing so; and

- There is no mechanism, requirement, or clause in the Agreement by which Hellervik is supposed to reimburse Concord for transportation costs either during the course of the performance or in the event of a breach.

(Mot. at Ex. 3).

Unable to point to contractual language making transportation costs part of the contract price, Concord, instead relies on parol evidence of why it would like to be able to recover transportation costs[1]. Of course, even if those facts are true, they are simply an explanation of why Concord perhaps should not have agreed to waive incidental damages. But the parties did agree to waive incidental damages, and parol evidence should not be used to alter an arm's length contract, particularly as no party has plead ambiguity.

Further, Concord's request that the Court look outside the Agreement for its terms is precluded by the Agreement's merger clause, which provides:

> [the Agreement] contain[s] the entire agreement of the parties respecting the matters addressed therein, and no oral promises, agreements or warranties shall be deemed a part thereof. Nor shall any alteration or amendment of a Contract or waiver of any of its provisions be binding upon either party hereto unless the same is in writing and signed by the party to be charged.

(Mot. at Ex. 3 ¶30).

---

[1] Because the parol evidence submitted by Concord is inadmissible, Hellervik has filed objections to the affidavits. Even if the affidavits are admitted in their entirety, however, they should still be disregarded as irrelevant. The plain language of the contract and Plaintiff's own damages report demonstrate as a matter of law that the damages identified in Hellervik's Motion are prohibited by the contract.

Contrary to the merger clause and Texas law on contract construction, Concord asks the Court not to enforce the Agreement's language but instead impose contractual obligations on Hellervik based on Concord's employee's now-stated beliefs about Concord's reasons for entering the Agreement and the circumstances that led Concord to enter the Agreement. (Resp. p. 3)

Concord relies extensively on *Tennessee Gas Pipeline Co. v. Technip USA Corp.*, No. 01-06-00535-CV, 2008 WL 3876141 (Tex. App.—Houston [1st Dist.] Aug. 21, 2008, pet. denied) (mem. op.), but that opinion supports Hellervik's position, not Concord's. In *Tennessee Gas*, the court analyzed the interplay between a contract clause in an agreement between TGP and Technip that expressly imposed liability on Technip for certain risks, against the agreement's limitation of liability clause precluding consequential and incidental damages. (*Id.* at **5-8) Contrary to Concord's suggestion, the court in *Tennessee Gas* did not look outside the parties' agreement in construing the agreement between Technip and TGP, but rather the court focused its analysis on a detailed comparison of the different written provisions in the contract itself in order to harmonize them.

In *Tennessee Gas*, the court found the following contract provision controlling regarding the risks that Technip assumed:

> "all risk related to and any right to claim any adjustment in the Project Schedule or Contract Price for (i) topography or soil conditions, (ii) availability of laborers and Subcontractors, (iii) adequate availability and transportation of Equipment, and (iv) and [sic] breakdown or other failure of Equipment under the control of or provided by [Technip USA]." .. [and] Technip USA guaranteed that Substantial Completion would not be delayed beyond the "Substantial Completion Date on a Station-by-station basis."

(*Id*. at *7). The court held that to the extent that damages sought by TGP are encompassed by the risks that Technip expressly agreed to assume in the above quoted clauses, then those claims are direct damages, not consequential or incidental damages. (*Id*. at 7-8)

In the case before the Court, there is simply no language in the Agreement where Hellervik agrees to assume the risk or be responsible for Concord's transportation costs of Y-Grade.

### E. Concord's Duty to Mitigate Damages does Not Invalidate a Valid, Enforceable Limitation on Liability Clause.

Concord seems to suggest that when Concord mitigated its damages Concord sustained categories of damages that are barred by limitation on liability clause in the Agreement. Concord argues that the Court not "punish" Concord by enforcing the limitation of liability clause in the Agreement. Holding Concord to its word in a binding, duly executed contract, is fair and reasonable, not punishment.

The Texas Supreme Court has emphasized the strong public policy favoring freedom of contract and enforcement of limitation on liability clauses. (Mot. at pp. 8-9). Under Texas law, a party's duty to mitigate damages does not invalidate an otherwise enforceable limitation on liability clause. The cases cited by Concord do not suggest otherwise.

### F. The Motion is Not Premature.

Concord's final argument is a plea for delay. It wants to put off the inevitable by asking this Court not to enforce the plain language of the parties' contract yet. There is no reason for the Court to do so, and doing so would deprive Hellervik of one of the key benefits of the contractual language—avoiding the expense of expert and fact discovery on complex damages that are expressly prohibited by the contract.

The damages that Concord seeks that are not challenged by Hellervik's motion total approximately $170,000.00. The contractually prohibited damages that Concord seeks total approximately $1,700,000.00. That is, Concord is seeking to increase by a factor of 10-fold the magnitude of this case. If it is permitted to do so despite contractual language to the contrary, it will radically alter the cost, risk and complexity of the lawsuit. That is why Concord wants to

delay a ruling. Parties should be comfortable that when they enter into contractual provisions limiting the scope of litigation, courts will respect and enforce those provisions. Doing so fosters freedom of contract, reliability of contracts, and the efficient allocation of risk among contracting parties.

**G.     Conclusion**

For these reasons, Hellervik respectfully requests that the Court grant the Motion and issue an order dismissing with prejudice Concord's claim for damages for Concord's alleged Lower Net Proceeds and Incremental Transportation costs, all of which are barred by Paragraph 20 of the Parties' Agreement.

Dated: January 10, 2022

Respectfully submitted,

*/s/ Samuel D. Davis*

**Samuel D. Davis, Esq.**
Attorney-in-Charge
SD Tex. Bar No. 699933
State Bar of Texas No. 24055381
THE LAW OFFICE OF SAMUEL D. DAVIS, PLLC
2525 Robinhood Street, Suite 206
Houston, TX 77005
Tel: 713-800-2994
sdavis@samueldavislaw.com

and

**Penn C. Huston**
SD Tex. Bar No.: 20542
State Bar of Texas No. 00796804
MOUERHUSTON PLLC
349 Heights Blvd.
Houston, TX 77007
Tel: 832-410-4540
phuston@mouerhuston.com

ATTORNEYS FOR HELLERVIK OILFIELD TECHNOLOGIES, LLC

12

## **CERTIFICATE OF SERVICE**

    I hereby certify that on this 10th day of January, 2022, a true and correct copy the foregoing was served upon all counsel of record through the Court's CM/ECF system.

*/s/ Penn C. Huston*
Penn C. Huston
